**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **DANIEL D. BATSALKIN** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:25-CV-00672-O** |
| | § | |
| **SELECT PORTFOLIO SERVICING INC, ET AL.,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**OPINION AND ORDER**

Before the Court are Defendants' Motion for Summary Judgment and Brief in Support (ECF Nos. 37–38), Plaintiff's Response and Brief in Support (ECF Nos. 40–41), and Defendants' Reply (ECF No. 44). Having considered the Motions, briefing, and applicable law, the Court **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 37) on all of Plaintiff's claims and on two of Defendants' seven counterclaims.

## I. BACKGROUND[1]

On July 16, 2021, Plaintiff David D. Batsalkin ("Plaintiff") and his wife, as trustees of the DE-MLB Family Trust dated May 18, 2011 (the "Trust") purchased property located at 609 Chapel Court, Southlake, Texas 76092 (the "Property"). To finance the property, the Trust executed a promissory note in favor of Angel Oak Mortgage Solutions for the principal amount of $1,418,800.00. That same day, the Trust executed a deed of trust encumbering the Property to secure the payment of the promissory note. The deed of trust was recorded in the Official Public Records of Tarrant County, Texas, and authorizes Defendants Select Portfolio Servicing Inc, et al.

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiffs' Petition. See Pl.'s Pet., ECF No. 1-1.

("SPS Defendants") to accelerate the maturity date of the note and to foreclose on the property in the event of default.[2]

Plaintiff, beginning on September 1, 2021, was required to make monthly principal and interest payments of $6,876.21. Although he and his family moved onto the property a month after its purchase, Plaintiff admitted to purchasing the property under the Trust and for "investment" purposes.[3]

On October 5, 2022, SPS Defendants received Plaintiff's full and complete loss mitigation application. Then on May 30, 2023, SPS Defendants entered into a first repayment plan with Plaintiff where he agreed to make nine payments of $22,876.77 beginning on June 24, 2023, until February 24, 2024. On June 26, 2023, Plaintiff failed to make the full first payment under this new repayment plan. SPS Defendants mailed Plaintiff a letter dated July 31, 2024, informing him that the loan was in default and that to cure default Plaintiff could pay SPS Defendants $153,080.02 by September 2, 2024.

Before the September 2, 2024, deadline, on August 16, 2024, SPS Defendants reached a different repayment plan agreement with Plaintiff where they agreed that Plaintiff would pay SPS Defendants twelve payments of $12,000.00 starting on August 30, 2024, through July 30, 2025. Once again, when the second repayment plan became due on August 30, 2024, Plaintiff did not pay the full amount. Since December 2023, Plaintiff failed to make any further payments on the property.

In the meantime, on February 28, 2025, Angel Oak executed an assignment of the deed of trust to Wilmington Savings Fund, FSB. This assignment was recorded in Tarrant County, Texas

[2] Pl.'s App. Resp. Mot. Summ. J. Ex. 4 (Deed of Trust), App. 61–80, ECF No. 42-1.
[3] Pl.'s App. Resp. Mot. Summ. J. Ex. B (Deposition Excerpt of Daniel D. Batsalkin), App. 92–95, ECF No. 42-2.

on March 5, 2025. SPS Defendants are the loan servicers and act in connection with the administration and enforcement of the note and deed of trust.

Because Plaintiff had failed to make his payments, on April 14, 2025, SPS Defendants mailed a notice of acceleration and notice of substitute trustee's sale to him. In this notice, SPS Defendants notified Plaintiff of the upcoming foreclosure sale on June 3, 2025. A few days after Plaintiff received the notice, SPS Defendants informed Plaintiff that his third loss mitigation application had been submitted and was under review, thirty-nine days before the scheduled June 3, 2025, foreclosure. His application was denied on May 6, 2025.

To stop the foreclosure sale taking place on June 3, 2025, Plaintiff filed a motion in the 141st District Court of Tarrant County. A temporary restraining order was entered, preventing SPS defendants from foreclosing on the property. Defendants removed the case on June 11, 2025. Plaintiff sued SPS Defendants for (1) failure to comply with the Real Estate Settlement Procedures Act ("RESPA"), (2) breach of contract, and (3) violations of the Texas Debt Collection Act ("TCDA").

SPS Defendants filed seven counterclaims in response: (1) judicial foreclosure, (2) enforcement of assignment of rents, (3) breach of contract, (4) conversion of rents, (5) breach of fiduciary duty, (6) unjust enrichment, and (7) appointment of receiver.[4] Defendants have moved for summary judgment on all plaintiffs' claims and only on Defendants' foreclosure and breach of contract claims. Defendants did not move on five of their counterclaims and those five are not considered herein. The motions are now ripe for this court's review.

[4] Def.'s Amend. Countercl., ECF No. 26.

## II. LEGAL STANDARD

Summary judgment is proper when the pleadings and evidence on file show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant makes a showing that there is no genuine dispute as to any material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(c).

When reviewing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination as to conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250.

## III. ANALYSIS

### A. Plaintiff's Claims

1. <u>The Real Estate Settlement Procedures Act ("RESPA") Does Not Apply to Loans Extended for Business or Investment Purposes.</u>

Plaintiff alleges that SPS Defendants violated RESPA, which provides that a loan servicer may not foreclose on property after receiving a completed loss mitigation application from a

borrower. *Spraggins v. Caliber Home Loans, Inc.*, 2020 WL 8366645 (N.D. Tex. Dec. 31, 2020). "RESPA is a consumer protection statute." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 995 (5th Cir. 2019). The language of the 12 U.S.C. § 2606(a) indicates the statute "does not apply to credit transactions involving extensions of credit . . . primarily for business [or] commercial . . . purposes." 12 U.S.C. § 2606(a). Thus, for a borrower to properly invoke RESPA, the borrower must have obtained a loan or mortgage for a *consumer* purpose. *See generally Okorie v. Univ. Mall, LLC*, No. 2:24-CV-63-TBM-RPM, 2025 WL 978403, at *10 (S.D. Miss. Mar. 31, 2025), aff'd sub nom. *Okorie v. Univ. Mall, L.L.C.*, No. 25-60185, 2025 WL 2604468 (5th Cir. Sept. 9, 2025) (RESPA did not apply because "it [was] clear that the loan taken out on the property was for Dr. Okorie's medical practice").

The purpose of RESPA is to "protect home buyers from material nondisclosures in settlement statements and abusive practices in the settlement process." *Cortez v. Keystone Bank, Inc.*, No. 98-2457, 2000 WL 536666, at *10 (E.D. Pa. May 2, 2000). RESPA promotes "transparency and communication between borrowers and lenders." *Cocchia v. LendingHome Funding Corp.*, No. SA-20-CV-00066-JKP, 2020 WL 1879223, at *2 (W.D. Tex. Apr. 15, 2020). The statute requires servicers of federally related mortgage loans to comply with specific notice and disclosure requirements. *Id.*; *see also* 12 U.S.C. § 2605. Failure to comply with these requirements makes servicers liable to borrowers for any actual damages incurred by the borrowers related to such failures. 12 U.S.C. § 2605(f)(1)(A); *Cocchia*, 2020 WL 1879223, at *2.

The question here turns on whether Plaintiff's loan is a consumer loan such that RESPA applies. Plaintiff now argues that because his family lives on the property, the loan must be categorized as a consumer loan despite his initial intent to use the Property for investment or business purposes. To determine whether a loan was made for business or investment purposes,

§ 2602(b) directs the Consumer Financial Protection Bureau ("CFPB") that the exemptions under § 2606(a)(1) "shall be the same as the exemption[s] for such credit transactions under section 1603(1) of Title 15[,]" the Truth in Lending Act ("TILA"). § 2606(b).

While TILA's commentary regarding the business-purpose determination is incorporated into the RESPA analysis, *In re Booth* provides a framework for how to approach whether a loan was made for a business or consumer purpose. 858 F.2d 1051 (5th Cir. 1980). If the initial purpose of the loan was for a "profit motive, it is outside the definition of consumer credit." *Id.* at 1055 (noting that TILA requires a profit motive test to determine whether a loan is for a business or consumer purpose); *Toy Nat. Bank of Sioux City v. McGarr*, 286 N.W.2d 376, 378 (Iowa 1979) (The court rejected a "shifting" purpose of a loan because "[s]uch a view would create uncertainty in the application of the Act and could completely swallow the business purpose exception. The only workable approach is to characterize a loan transaction by the use to which the proceeds are *originally* placed and maintain the same characterization throughout the life of the loan.") (emphasis added). Relatedly, if the initial purpose of the loan was for a consumer purpose, such as living on the property, then the court shall find that the loan was extended as a consumer loan regardless of whether the property was subsequently used as an investment property. *Tower v. Moss*, 625 F.2d 1161, 1166 (5th Cir. 1980) (TILA applied because the loan was initially extended as a consumer loan although "Ms. Moss agreed to rent the house to a third party" after the loan had been extended). As such, the borrower's original intent for acquiring the loan controls.

Building on the *In re Booth* framework, "[w]hether [the loan] was incurred with an eye toward profit" at the time it was transacted determines the nature of the loan. 858 F.2d at 1055; *McGarr*, 286 N.W.2d at 378. Here, Plaintiff attempts to classify the loan as a consumer loan because Plaintiff and his family moved onto the property about a month after they purchased it.

However, during his deposition, he admitted that "[he] intended [the property] to be an investment property." To further confirm that the original intent of the loan was for an investment purpose, when Plaintiff executed the Affidavit of Occupancy on July 16, 2021, he indicated that the loan covered an "Investment Property: Not owner occupied. Purchased as an investment to be held or rented."[5] Because Plaintiff admitted that his *original* intention was to purchase the home for investment purposes,[6] the profit motive test is satisfied. Accordingly, his loan is categorized as a business-purpose loan and so RESPA does not apply.

Plaintiff's reliance on the CFPB's commentary on TILA is unavailing.[7] Although the CFPB acknowledges that "[c]onsumers sometimes place their assets in trust . . . to obtain certain tax benefits[,]" this commentary recognizes that "the transaction [must have been] primarily for personal, family, or household purposes" for the regulation to apply. 12 C.F.R. pt. 1026, Supp. 1, § 1026.3 Comment 3(a)-10.i. Here, because the loan was extended primarily as an investment loan, Plaintiff cannot rely on the CFPB's commentary for justification that RESPA applies here.

2. Plaintiff's Breach of Contract Fails as a Matter of Law.

Plaintiff's second claim for breach of contract fails as a matter of law. Under Texas law, a plaintiff alleging breach of contract must establish (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages resulting from the breach. *IAS Servs. Grp. L.L.C. v. Jim Buckley & Assocs.*, 900 F.3d 640, 652 (5th Cir. 2018).

Here, although there is a valid contract, Plaintiff has not established performance or tendered performance. Generally, under Texas law, "a party who is in default of a contract cannot

[5] Def.'s App. Supp. Mot. Summ. J. Ex. 1-M (Affidavit of Occupancy), App. 155, ECF No. 38-1.
[6] Pl.'s App. Resp. Mot. Summ. J. Ex. B (Deposition Excerpt of Daniel D. Batsalkin), App. 92–95, ECF No. 42-2.
[7] Pl.'s Resp. Mot. Summ. J. 9, ECF No. 41.

maintain a suit for its breach." *See Ramex Constr. Co. v. Tamcon Servs., Inc.*, 29 S.W.3d 135, 137 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Additionally, Texas courts have understood a failure to make required loan payments as a failure to establish performance required by a breach of contract claim. *Barry v. LoanDepot.com*, LLC, No. 14-24-00352-CV, 2025 WL 3010191, at *3 (Tex. App. Oct. 28, 2025). Here, "[t]he evidence is uncontroverted . . . that the [Plaintiff] failed to make the mortgage payment[s]" since December 31, 2024 "[and] failed to make any payment thereafter . . . . Thus, [Plaintiff] did not perform or tender performance, but instead breached the contract." *Moe v. Option One Mortgage Group*, No. 14-07-00550-CV, 2009 WL 136892 (Tex. App.—Houston [14th Dist.] Jan. 20, 2009, no pet.) (mem. op.).

As to the third and fourth elements, Plaintiff fails to identify any breach by SPS Defendants and cannot establish damages. Because Plaintiff cannot bring a claim under RESPA for the reasons stated above, no breach of the Deed of Trust occurred. Any acceleration of payment and subsequent attempt to foreclose on the property was permissible by the Deed of Trust upon default and after proper notice to Plaintiff.[8] Additionally, Plaintiff cannot show damages based on any cognizable breach of contract claim. Accordingly, his breach of contract claim, as a matter of law, is **DISMISSED**.

3. Texas Debt Collection Practices Act ("TCDA") Applies Only to Consumer Debt.

Plaintiff further alleges that SPS Defendants violated TCDA. The Texas statute, like RESPA, was designed "to prevent debt collectors from using threats, coercion, or other wrongful practices to collect consumer debts." *Williams v. Lakeview Loan Servicing LLC*, 694 F.Supp.3d 874, 893 (S.D. Tex. 2023). For a violation of TCDA to occur, Plaintiff has to satisfy five elements: (1) Plaintiffs' mortgages are consumer debts; (2) Defendants engaged in debt collection within the

[8] Def.'s App. Supp. Mot. Summ. J. Ex. 1-B (Deed of Trust), App. 26, ECF No. 38-1.

meaning of the TDCA; (3) Defendants committed a wrongful act in violation of the TDCA; (4) Defendants committed the wrongful act against the Plaintiffs; and (5) Plaintiffs were injured by the Defendants' wrongful act. *Id.*

Again, like the RESPA claim, the issue here turns on whether Plaintiff's loan is considered a "consumer debt" under Texas law. The Fifth Circuit has not squarely addressed the issue of what elements define "consumer debt" for TDCA purposes but, in *Garcia v. Jenkins Babb, L.L.P.*, the Fifth Circuit applied Seventh Circuit law "for the proposition that courts must focus on the 'nature of the purchase or transaction' when determining whether a debt is a 'consumer debt.'" 569 F.App'x 274, 276 (5th Cir. 2014) (citing *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 874-75 (7th Cir. 2000) (emphasis added)). Although not binding, the Seventh Circuit's reasoning is persuasive. There, the court "found the mortgage to be consumer debt under the FDCPA because, even though the purchased home was *later* converted to rental property, *at the time of the mortgage transaction* the home was plaintiff's residence." *Williams v. Lakeview Loan Servicing LLC*, 694 F. Supp. 3d 874, 894 (S.D. Tex. 2023) (citing *Miller*, 214 F.3d at 874-75) (emphasis added). So, "consumer debt" under the TCDA should be examined by inquiring into the nature of the mortgage transaction at the time the loan was extended. Any subsequent changes to the purpose or use of the property secured by the loan is not relevant.

As set out above, Plaintiff acquired the loan for a business-investment purpose.[9] Therefore TCDA is inapplicable, and Plaintiff's final claim fails as a matter of law.

**B. Defendants' Counterclaims Analysis**

1. <u>Defendants are Entitled to Foreclosure as a Matter of Law Because All Elements are Satisfied and There Is No Genuine Dispute of Material Fact.</u>

[9] Pl.'s App. Resp. Mot. Summ. J. Ex. B (Deposition Excerpt of Daniel D. Batsalkin), App. 92–95, ECF No. 42-2.

Defendants bring a foreclosure counterclaim against Plaintiff. For a court to grant summary judgment on a foreclosure claim, the movant must establish (1) the existence of a "financial obligation," (2) a "lien securing" that financial obligation, (3) "default" on the obligation, (4) that the non-movant "received notice of default and acceleration," and (5) that the property subject to foreclosure is the same property subject to the lien." *See Maldonado v. CitiMortgage, Inc.*, 76 F.App'x 282, 284 (5th Cir. 2017) (establishing element 1, 2, 3, and 5); *Bank of N.Y. Mellon Tr. Co., Nat'l Ass'n v. Millard*, No. A-5-CA-01035-SS, 2017 WL 3446033, at 3 (W.D. Tex. 2017) (establishing element 4).

Defendants bring a successful foreclosure claim as a matter of law. The first element is satisfied because Plaintiff owed a financial obligation to SPS Defendants to pay monthly installments for the loan he acquired.[10] The second element is satisfied because the Trust owns the loan, and SPS Defendants handle the loan payments and other servicing tasks for the Trust. So, the lien securing the loan is the Property and SPS Defendants have a lien on the property securing the loan payments.[11] The third element is satisfied because Plaintiff has been in default since December 31, 2024.[12] The fourth element is met because SPS Defendants provided proper notice of default and acceleration required by the note and Deed of Trust.[13] As required by the Deed of Trust Paragraph 22, SPS Defendants had to give notice of the default; the "action required to cure the default; a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the

[10] Pl.'s App. Resp. Mot. Summ. J. Ex. 3 (Note), App. 54–60, ECF No. 42-1.
[11] *Id.*
[12] Def.'s App. Supp. Mot. Summ. J. Ex. 1-F (Payment History), App. 47–85, ECF No. 38-1.
[13] Def.'s App. Supp. Mot. Summ. J. Ex. 1-B (Deed of Trust), App. 26, ECF No. 38-1; Def.'s App. Supp. Mot. Summ. J. Ex. 1-G (07.31.2024 Notice of Default), App. 139, ECF No. 38-1.

Property."[14] SPS Defendants complied with the terms in the deed of trust when they sent Plaintiff a letter, complying with Paragraph 22, dated July 31, 2024.[15] The fifth element is satisfied because the property subject to foreclosure is the same property subject to the lien: 609 Chapel Court, Southlake, Texas 76092.[16]

Because Defendants satisfied all five elements required by Texas law for a foreclosure claim, Defendants are entitled to summary judgment as a matter of law. SPS Defendants' motion for summary judgment on their foreclosure counterclaim is **GRANTED** as a matter of law.

2. Defendants Prevail on a Breach of Contract Claim as a Matter of Law Because All Elements are Satisfied and There Is No Genuine Dispute of Material Fact.

Defendants bring a counterclaim of breach of contract against Plaintiff. The elements under Texas law for a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the plaintiff, and (4) damages resulting from the breach. *IAS Servs. Grp. L.L.C. v. Jim Buckley & Assocs.*, 900 F.3d 640, 652 (5th Cir. 2018).

As noted above, a valid contract exists between Plaintiff and SPS Defendants. Plaintiff and Defendants do not dispute that a loan existed, that the loan was secured by the property at 605 Chapel Court, Southlake, Texas 76092, and that Plaintiff was required to make contractual payments on the loan.[17] SPS Defendants performed their obligations under the contract. Again, it is undisputed that SPS Defendants authorized, serviced, and administered the loan. Defendants

---

[14] Def.'s App. Supp. Mot. Summ. J. Ex. 1-B (Deed of Trust), App. 26, ECF No. 38-1.

[15] The letter SPS Defendants sent Plaintiff informed Plaintiff that the amount required to cure the default was $153,080.02 by September 2, 2024. *Id.*

[16] Def.'s App. Supp. Mot. Summ. J. Ex. 1 (Declaration in Support of Motion for Summary Judgment by Patrick Pittman), App. 7, ECF No. 38-1; Def.'s App. Supp. Mot. Summ. J. Ex. 1-B (Deed of Trust), App. 19–39, ECF No. 38-1; Def.'s App. Supp. Mot. Summ. J. Ex. 2 (05.21.2026 Plaintiff's Responses to Defendants' Second Interrogatories and Second Requests for Production) App. 167, ECF No. 38-1.

[17] Pl. App.'s Resp. Mot. Summ. J. Ex. 3 (Note), App. 54–60, ECF No. 42-1.

fully complied with any notice of default and acceleration requirements, therefore they rendered performance required by the enforceable contract. Additionally, Plaintiff breached the contract when Plaintiff failed to make the required monthly payments of principal and interest amounts since December 2024.[18] Finally, Defendant suffered damages because of Plaintiff's breach. The current outstanding balance resulting from Plaintiff's failure to pay is $1,362,342.13.[19] Accordingly Defendants provide that accrued interest continues at the rate of 4.125% per annum from December 1, 2023, through the date of judgment.[20] Defendants also suffered damages and are entitled to attorneys' fees and costs related to enforcing the loan documents, according to the note and Deed of Trust.[21]

Because no genuine dispute of material fact has been raised by plaintiff regarding the elements of Defendant's breach of contract claim, SPS Defendants are **GRANTED** summary judgment on the breach of contract claim.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Defendants are entitled to summary judgment as a matter of law on all of Plaintiff's claims and on Defendants' foreclosure and breach of contract claim. The Court reserves ruling on damages until all claims have been resolved. Five of Defendants' counterclaims remain: enforcement of assignment of rents, conversion of rents, breach of fiduciary duty, unjust enrichment, and appointment of receiver Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 37.

---

[18] Def.'s App. Supp. Mot. Summ. J. Ex. 1-F (Payment History), App. 47–85, ECF No. 38-1.
[19] Def.'s App. Supp. Mot. Summ. J. Ex. 1 (Declaration in Support of Motion for Summary Judgment by Patrick Pittman), App. 10, ECF No. 38-1.
[20] *Id.*
[21] Def.'s App. Supp. Mot. Summ. J. Ex. 1-A (Note), App. 13, ECF No. 38-1; Def.'s App. Supp. Mot. Summ. J. Ex. 1-B (Deed of Trust), App. 26, ECF No. 38-1.

**SO ORDERED** on this **2nd day** of **September, 2026**.

Reed O'Connor
CHIEF UNITED STATES DISTRICT JUDGE